UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-111-F

| | |
|---|---|
| THE UNITED STATES FOR THE USE )<br>OF MARTIN MARIETTA MATERIALS, )<br>INC., by and through its division, MARTIN )<br>MARIETTA AGGREGATES, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>DTC ENGINEERS & CONSTRUCTORS, )<br>LLC and THE HANOVER INSURANCE )<br>COMPANY, )<br>)<br>Defendants. ) | **ORDER** |

This matter is before the court on the Motion to Dismiss [DE-13] filed by Defendants DTC Engineers & Constructors, LLC and the Hanover Insurance Company (hereinafter referred to individually as "DTC" or "Hanover" or collectively as "Defendants"). Plaintiff Martin Marietta Materials, Inc., by and through its division, Martin Marietta Aggregates ("Plaintiff") filed a Response [DE-15] in opposition. Defendants have filed a Reply [DE-16]. This matter is now ripe for adjudication.

## I. BACKGROUND

Plaintiff filed suit against Defendants alleging a claim under the Miller Act, 40 U.S.C. § 3131 *et seq*. The facts as alleged in the complaint are as follows: Plaintiff contend that DTC entered into a contract with the United States through the Department of Navy for the construction of the Vehicle Storage and Maintenance Facility at Cherry Point MCAS ("Project"). [DE-4], Am. Compl., ¶ 5.

Pursuant to the Miller Act, DTC allegedly posted a Payment Bond ("Bond") securing the payments to its subcontractors and suppliers for the work to be performed on the Project. Hanover was the surety on the Bond. *See* [DE-4], Am. Compl., ¶ 10.

According to Plaintiff, DTC entered into a subcontract with C.R. Peele Construction Co., Inc. ("C.R. Peele") for performance of work on the Project. [DE-4], Am. Compl., ¶ 5. Plaintiff claims that beginning in or around November 11, 2008, C.R. Peele purchased construction materials from Plaintiff which were used for its work on the Project. *See* [DE-4], Am. Compl., ¶¶ 7, 14. Plaintiff alleges that, on June 30, 2010, C.R. Peele filed for bankruptcy under Chapter 11 of the Federal Bankruptcy Code. *See* [DE-4], Am. Compl., ¶ 6. As a result of the materials supplied to C.R. Peele, Plaintiff contends that there is an outstanding principal balance of fifteen thousand nine hundred fifty one dollars and ninety four cents ($15,951.94). *See* [DE-4], Am. Compl., ¶¶ 8, 9. Plaintiff asserts that DTC has wrongfully failed to pay the amount owed and further alleges that Hanover is liable for this balance as a result of the Bond issued for the Project. *See* [DE-4], Am. Compl., ¶¶ 16, 20.

On April 28, 2011, Defendants filed this instant Motion to Dismiss [DE-13] claiming that Plaintiff failed to bring suit before the expiration of the one (1) year filing period as specified under the Miller Act.[1]

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

When a court considers a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in a complaint will be construed in the nonmoving party's

---

[1] Along with the Motion to Dismiss [DE-13], Defendants submitted a copy of the state court complaint filed by Plaintiff on the Bond on December 10, 2011. *See* [DE-13], Mot. to Dismiss, Ex. 1.

favor and treated as true. *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). However, a court is not bound "to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a). To survive a motion to dismiss, the factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level" and have "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The issue in reviewing the sufficiency of the pleadings in a complaint is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims made. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir.1989) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Dismissal, however, is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir.1996); *see generally,* 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004) ("A complaint showing that the statute of limitations has run on the claim is the most common situation in which the affirmative defense appears on the face of the pleading," rendering dismissal appropriate).

Moreover, extrinsic evidence should not be considered at the Rule 12(b)(6) stage. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). However, a district court may consider an extrinsic document if it is integral to and explicitly relied on in the complaint and its authenticity is not challenged. *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th

Cir. 1999). Also, the court may take judicial notice of matters of public record without converting a motion to dismiss under 12(b)(6) into a motion for summary judgment. *Clark v. BASF Salaried Employees' Pension Plan*, 329 F.Supp.2d 694, 697 (W.D.N.C. 2004).

**B. Extrinsic Materials**

Both parties have submitted several documents in connection with this instant motion. Defendants, with their Motion to Dismiss [DE-13], have submitted an exhibit titled "Complaint filed in state court." This exhibit appears to be Plaintiff's state court complaint along with invoices that illustrate the delivery date and monetary amount of the materials allegedly provided by Plaintiff to C.R. Peele. Although these documents are extrinsic materials outside of the amended complaint, the court will take judicial notice of these materials as they are part of the public record from a previously filed state court suit. *See id.*

Plaintiff, in its Response [DE-15] in opposition, has attached various exhibits. First, the court will consider, in part, exhibit one (1) titled "Notice Letter and Response." This exhibit appears to be a Notice Letter, Bond, and Hanover's Response to the Notice Letter. As the identical Notice Letter and Bond have previously been submitted as exhibits with the amended complaint, these document are not extrinsic and the court will take these documents into consideration. The court, however, chooses not to consider Hanover's Response to the Notice Letter as it is an extrinsic document that does not add any substantive value to Plaintiff's suit.[2] Second, the court will consider exhibit two (2) titled "Affidavit of Claim" which appears to be a sworn affidavit by Plaintiff's finance manager as to the monetary amount still owed as a result of the materials provided to C.R.

---

[2] Hanover's Response confirms the receipt of Plaintiff's Notice Letter and requests documents to investigate the claim that has been made on the payment bond.

4

Peele for the Project, along with copies of invoices supporting the information in the affidavit. As the affidavit and associated invoices are directly related to the monetary amount sought by Plaintiff, the court finds such document integral and will consider this exhibit.[3] *See Phillips*, 190 F.3d at 618. Finally, the court declines to consider exhibits three[4] (3) and four[5] (4) as they appear to be documents related to C.R. Peele's bankruptcy suit. These materials are extrinsic and not integral to Plaintiff's instant suit. *See id.*

### III. DISCUSSION

Defendants have moved to dismiss Plaintiff's suit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**A. Savings Provision of Rule 41(a) of the North Carolina Rules of Civil Procedure**

Defendants argue that Plaintiff's suit should be dismissed as the Miller Act requires that any claim on the Bond be brought within one (1) year after the day in which the last of the materials were supplied. Plaintiff counters by claiming that it initially filed suit in state court on the bond before the expiration of the Miller Act's statutory one (1) year deadline. Plaintiff claims that, on January 31, 2011, it voluntary dismissed the state court action without prejudice, and refiled its suit in federal court on March 11, 2011. Therefore, Plaintiff contends that its Miller Act claim is saved

---

[3] The invoices attached are also identical to the ones Plaintiff submitted with its complaint filed in state court and because they are part of the public record, the court also chooses to take judicial notice of these documents.

[4] Exhibit three (3) includes invoices that were submitted with the state court complaint and exhibit two (2). It also appears that exhibit three (3) includes tickets related to the delivery of the materials provided to C.R. Peele.

[5] Both exhibits three (3) and four (4) convey that C.R. Peele is involved in a bankruptcy proceeding. However, both exhibits are not integral to the case before this court, namely, whether Plaintiff has a valid claim on the bond related to the Project under the Miller Act.

by the provisions of Rule 41(a) of the North Carolina Rules of Civil Procedure.[6]

The purpose of the Miller Act is "to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings." *United States ex rel. Sherman v. Carter*, 353 U.S. 210, 216 (1957). In fact, the Miller Act directs that if the federal government awards a general contractor a contract in an amount greater than one hundred thousand dollars ($100,000), the general contractor is required to obtain a payment bond for the "protection of all persons supplying labor and material in carrying out the work provided for in the contract." 40 U.S.C. § 3131(b). The Miller Act is high remedial and entitled to liberal construction. *See J.W. Bateson Co. v. United States ex. Rel. Bd. Of Trustees*, 434 U.S. 586, 594 (1978).

To state a valid Miller Act claim, a plaintiff must prove two essential elements: (1) that it has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under § 3131; and (2) it has not been paid in full within 90 days. *See* 40 U.S.C. § 3133(b)(1). Written notice must be provided to the general contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. 3133(b)(2). Moreover, "an action brought under [the Miller Act] must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." 40 U.S.C. 3133(b)(4).

For this case, Defendants have not advanced any arguments relating to whether adequate

---

[6] Rule 41(a) of the North Carolina Rules of Civil Procedure provides that "if an action commenced within the time prescribed therefor, or any claim therein, is dismissed without prejudice under the subsection, a new action based on the same claim may be commenced within one year after such dismissal." N.C. Gen. Stat., § 1A-1, Rule 41(a)(1).

written notice has been timely provided pursuant to the Miller Act. Moreover, both parties appear to be in agreement that the last day in which to file this Miller Act claim was December 11, 2010, and that this instant suit was filed on March 11, 2011 (after the expiration of the one (1) year filing period as required by the Miller Act). Therefore, the critical inquiry for this court is to determine whether the voluntary dismissal of the state court case on the Bond would toll the one (1) year filing period as prescribed by the Miller Act. The court is of the opinion that the state dismissal has no such effect.

If the case is before the district court by way of diversity jurisdiction, then it must apply the substantive law of the forum state including its choice of law rules. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007). In fact, district courts sitting in North Carolina have long recognized the applicability of the savings provision under Rule 41(a) of the North Carolina Rules of Civil Procedure to actions recommenced in federal court, so long as the case was before the district court on diversity jurisdiction. *See, e.g., Porter v. Groat*, 713 F.Supp. 893, 897-98 (M.D.N.C. 1989) (finding that the refiling of a medical malpractice action in federal district court, originally filed in state court and voluntarily dismissed, invoked the savings provision of Rule 41(a) of the North Carolina Rules of Civil Procedure, and therefore tolled the limitations period in which to bring suit); *see Haislip v. Riggs*, 534 F.Supp. 95, 98 (W.D.N.C. 1981) (stating that the savings provision of Rule 41(a) of the North Carolina Rules of Civil Procedure was applicable to its case before the district court by way of diversity jurisdiction); *Kahn v. Sturgil*, 66 F.R.D. 487, 491 (M.D.N.C. 1975) (stating that "the tolling of a state statute of limitation in a diversity case is strictly a substantive matter of state law which *Erie* commands that [district courts] follow absent substantial countervailing federal interests").

However, cases brought before the district court in which jurisdiction is not based on diversity of citizenship need not consider the applicability of a savings provision as Rule 41(a) of the Federal Rules of Civil Procedure contains no such provision. *See In re Matthews*, 395 F.3d 477, 480 (4th Cir. 2005)(stating that a dismissal without prejudice under Rule 41(a) operates to leave the parties as if no action had been brought at all); *see Harvey Specialty & Supply, Inc. v. Anson Flowline*, 434 F.3d 320, 324 (5th Cir. 2005)(stating that the plaintiff has an absolute right to a Rule 41(a)(1) dismissal, and the effect of such dismissal is to put the plaintiff in a legal position as if he had never brought the first suit). Furthermore, because these cases require that either the federal law creates the cause of action or that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, there is no occasion in which to apply state substantive law. *See* 28 U.S.C. § 1331; *see also Bockweg v. Anderson*, 328 N.C. 436, 438, 402 S.E.2d 627, 629 (1991).

Here, Plaintiff's claim is based on the Miller Act, which is purely federal in nature and scope, and provides exclusive jurisdiction to the federal courts. *See United States ex rel. Harvey Gulf Int'l v. Maryland Cas. Co.*, 573 F.2d 245, 247 (5th Cir. 1978). Moreover, the Miller Act has its own one (1) year period in which to file suit. *See* 40 U.S.C. 3133(b)(4). At bottom, the court has no occasion to consider the applicability of the savings provision under Rule 41(a) of the North Carolina Rules of Civil Procedure as the Miller Act is a purely federal act. The savings provision does not apply to actions arising from a federal question. *See Burnett v. New York Central*, 380 U.S. 424, 432-434 (1965) (rejecting that the use of the Ohio savings statute to save an untimely claim under the Federal Employers' Liability Act, which has its own statute of limitations); *see Beck v. Caterpillar, Inc.*, 50 F.3d 405, 406-07 (7th Cir. 1995) (noting that the general willingness to borrow states' tolling and savings provisions is limited to federal cases governed by state statute of limitations and not federal

8

claims governed by federal statutes of limitations); *Parrish v. HBO & Co.*, 85 F. Supp. 2d 792, 797 (S.D. Ohio 1999) (finding that Plaintiff's ADEA claim is not tolled by the savings provision in Ohio Rev. Code § 2305.19). Accordingly, the courts finds that Plaintiff's claim on the Bond is barred by the Miller Act's one (1) year period in which to file suit.

**B. Equitable Tolling**

Plaintiff, in the alternative, argues that equitable tolling should be applicable as it actively pursued its judicial remedies by filing a defective pleading before the expiration of the Miller Act's one (1) year period in which to bring suit. Defendants counter by claiming that Plaintiff failed to exercise due diligence in pursuing its legal rights as it waited until the day before the expiration of the Miller Act's one (1) year period to file suit on the Bond (defectively) in state court. Defendants' argument goes that, had Plaintiff filed its suit sooner, then it would have had sufficient time to dismiss the state court action and file the federal court action within the Miller Act's one (1) year filing period.

As an initial matter, other courts, including the Fourth Circuit, have held that when a plaintiff technically fails to file suit within the Miller Act's one (1) year filing period, the suit may nevertheless proceed if the delayed filing may be excused under an equitable doctrine. *See, e.g., United States ex rel. Humble Oil & Ref. Co. v. Fidelity & Casualty Co.*, 402 F.2d 893, 897-900 (4th Cir. 1968) (held that surety was estopped from pleading, as a defense, Miller Act's one (1) year period in which to bring suit when supplier failed to bring action within this filing period based upon surety's promise); *United States ex rel. Bernard Lumber Co. v. Lanier-Gervais Corp.*, 896 F.2d 162, 169 (5th Cir. 1990) (surety was estopped from contending that supplier failed to bring suit within the Miller Act's one (1) year limitations for filing suit when it was forbidden by a court injunction

9

to initiate litigation); *United States ex rel. E.E. Black, Ltd. v. Price-McNemar Constr. Co.*, 320 F.2d 663, 665-66 (9th Cir. 1963) (held that a defendant may be estopped from defending a Miller Act based on the ground that the case was not commenced within the one (1) year limitations period for filing suit); *Highland Renovation Corp. v. Hanover Insurance Group*, 620 F.Supp.2d 79, 82 (D.D.C. 2009) (finding that the "one-year period of limitations found in the Miller Act is substantive, not jurisdictional, and thus is an affirmative defense that must be analyzed under Rule 12(b)(6) instead of Rule 12(b)(1), and be subject to the doctrines of waiver, estoppel, and equitable tolling.").

However, federal courts have "typically extended equitable relief only sparingly" and have allowed equitable tolling in situations where "the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs et al.*, 498 U.S. 89, 96 (1990). The Supreme Court stated that "[w]e have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.* (citing *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984)). "[T]he principles of equitable tolling described [] do not extend to what is at best a garden variety claim of excusable neglect." *Id.* at 96. The Fourth Circuit has stated that "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000); *Spencer v. Sutton*, 239 F.3d 626, 629 (4th Cir. 2001). In sum, the circumstances under which equitable tolling has been permitted are quite narrow. *See Chao v. Virginia Dept. of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002).

Here, Plaintiff is not arguing that it has been induced or tricked by Defendants' misconduct

into allowing the Miller Act's one (1) year period in which to file suit to expire. Instead, Plaintiff contends that it has actively pursued its judicial remedies, albeit, in the state court under a state statute. Upon recognition of the defective pleading, Plaintiff claims that it promptly dismissed the state suit and filed in federal court. Ultimately, Plaintiff argues that it has actively pursued its judicial remedies and therefore the Miller Act's one (1) year limitations for filing suit should be equitably tolled. The court disagrees.

Plaintiff explains that it "reasonably believed that it could recover at least some of its contract balance through the bankruptcy, and questioned its right to file on the bond in light of the bankruptcy...[and] [o]ut of an abundance of caution with respect to the statutory deadlines, [it] filed a complaint on the bond...on or about December 10, 2010[.]" [DE-15], Mot. in Opp., p. 2. Unfortunately for Plaintiff, it filed claim on the Bond for a federal public project in state court under a state statute. Reasonable due diligence should have alerted Plaintiff that any such claim should have been filed in federal court pursuant to the Miller Act. The Miller Act is designed to protect persons supplying labor and materials for the construction of *federal* public buildings, *see Sherman*, 353 U.S. at 216 (emphasis added), and provides *exclusive jurisdiction to federal courts. Maryland Cas. Co.*, 573 F.2d at 247 (emphasis added). At bottom, Plaintiff incorrectly believed that it could file suit on the Bond securing a federal public project in state court under a state statute. Moreover, upon recognition of such mistake, and after voluntary dismissing its case in state court, Plaintiff waited approximately another six (6) weeks to file its Miller Act suit in this court. Under these circumstances, and upon careful consideration, the court finds that the application of equitable tolling to the Miller Act's one (1) year period in which to bring suit is not appropriate for this case.

## IV. CONCLUSION

Based on the aforementioned rationale, Defendant's Motion to Dismiss [DE-13] is **ALLOWED**. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This the 18th day of June, 2012.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge

12